| | | |
|---|---|---|
| Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>PANEL ESPECIAL | | |
| CORPORACIÓN DEL PROYECTO ENLACE DEL CAÑO MARTÍN PEÑA<br><br>Recurrente<br><br><br>v.<br><br><br>OFICINA DE GERENCIA DE PERMISOS (OGPe.)<br><br>Recurrido | TA2025RA00092 | *REVISIÓN ADMINISTRATIVA* procedente de la Oficina de Gerencia de Permisos<br><br>Caso número: 2025-618759-SDR-302107<br><br>Caso número ante la Oficina de Permisos del Municipio de San Juan: 2024-584496-PU-343658<br><br>Sobre: Permiso de Uso |

Panel integrado por su presidenta, la jueza Ortiz Flores, la juez Aldebol Mora y la jueza Boria Vizcarrondo.

Aldebol Mora, Juez Ponente

# SENTENCIA

En San Juan, Puerto Rico, a 9 de septiembre de 2025.

Comparece la recurrente, Corporación del Proyecto ENLACE del Caño Martín Peña (ENLACE, Corporación o recurrente), mediante recurso de revisión de decisión administrativa, y solicita que revoquemos la *Resolución de Revisión Administrativa*, emitida el 20 de junio de 2025, notificada el 23 del mismo mes y año, por la División de Revisiones Administrativas (División o DRA) de la Oficina de Gerencia de Permisos (OGPe o recurrida).

Mediante el referido dictamen, la División declaró No Ha Lugar la solicitud de revisión administrativa presentada por ENLACE. La División basó su dictamen en el hecho de que ENLACE no acreditó ni demostró poseer legitimación activa para instar el recurso de revisión ante la División y tampoco solicitó participar como parte interventora. Además, resolvió que la recurrente no probó que la

actuación del Municipio Autónomo de San Juan (Municipio), fuera ilegal, arbitraria o caprichosa.

Tanto el Municipio Autónomo de San Juan (Municipio) como la OGPe presentaron sus correspondientes alegatos en oposición al recurso[1]. En síntesis, afirman que ENLACE no cumplió con los requisitos en ley para ser parte, ni demostró tener legitimación activa en el proceso de aprobación del permiso en controversia. Por tanto, sostienen que ENLACE no tiene legitimación activa para incoar el presente recurso. De igual forma, alegan que ENLACE tampoco logró derrotar la presunción de corrección que establece la *Ley para la Reforma del Proceso de Permisos de Puerto Rico*[2], sobre los permisos autorizados por la OGPe y/o el Municipio Autónomo con jerarquía delegada.

El 1 de agosto de 2025, emitimos *Resolución*, en la que, entre otros asuntos, ordenamos a la OGPe elevar copia certificada del expediente administrativo del caso 2025-618759-SDR-302107. La OGPe cumplió con nuestra resolución el 7 de agosto de 2025.

Evaluados los escritos presentados, así como el expediente administrativo, desestimamos el recurso por falta de jurisdicción. Como consecuencia de nuestro dictamen, se mantiene la aprobación del permiso 2024-584496-PU-343658.

I.

El 21 de junio de 2024, Red Multi Invests, LLC., (RED o proponente), por conducto de su presidente, Marcos A. Pérez Martínez (Pérez Martínez), presentó una *Solicitud de Permiso Único Vía Variación* ante la OGPe (Núm. 2024-584496-**PU**-343658). En esta, solicitó autorización para operar un local de arrendamiento de

---

[1] El 12 de agosto de 2025, la OGPe presentó *Alegato en Oposición de la Oficina de Gerencia de Permisos al Recurso de Revisión Judicial al Honorable Tribunal de Apelaciones* (Entrada Núm. 11 de SUMAC-TA). El 19 de agosto de 2025, el Municipio Autónomo de San Juan presentó *Alegato en Oposición* (Entrada Núm. 13 de SUMAC-TA).

[2] Ley Núm. 161 de 1 de diciembre de 2009, según enmendada. 23 LPRA § 9011 *et seq.*

vehículos de motor, ubicado en la Calle 13, Núm. 627, Local A, Esq. Ave. Rexach, Santurce, en el municipio de San Juan. El 10 de octubre de 2024, el Municipio rindió un *Informe de Inspección de Uso*[3]. El 23 de octubre de 2024, el Municipio le envió un mensaje de correo electrónico a ENLACE. En este, le adjuntó el *Informe de Inspección de Uso*, el *Memorial Explicativo* suscrito por Pérez Martínez y un boceto (croquis) del proyecto propuesto para que ENLACE evaluara los mismos y emitiera su determinación o endoso sobre éstos. El 28 de octubre de 2024, ENLACE acusó recibo de la solicitud y le afirmó al Municipio su responsabilidad de emitir una determinación en un plazo de veinte (20) días, a vencer el 12 de noviembre de 2024. Así las cosas, el 1 de noviembre de 2024, ENLACE cursó un correo electrónico al Municipio en el que le solicitó una extensión de veinte (20) días adicionales para emitir sus comentarios sobre el proyecto. En respuesta, el Municipio le requirió a ENLACE que se atendieran sus solicitudes, pues el tiempo "era crucial" y había términos reglamentarios en curso. Luego de varios intercambios de mensajes entre el Municipio y ENLACE, el 27 de noviembre de 2024, ENLACE envió una carta en la que informó que no endosaba la solicitud de permiso del proponente, por no ser cónsona con el Plan de Desarrollo Integral y Usos del Terreno: Distrito Especial Caño Martín Peña (PDI).

Así las cosas, el 4 de febrero de 2025, notificada el 5 del mismo mes y año, la Ingeniero Gladys A. Maldonado Rodriguez, Oficial de Permisos de la Oficina de Permisos del Municipio, emitió una *Resolución sobre Permiso Único Vía Variación.* En esta, emitió 10 determinaciones de hecho, de las cuales transcribimos las siguientes, por ser las atinentes a la controversia ante nos:

---

[3] Del informe surge que el uso propuesto era de *renta de automóviles o equipo,* que no existen otros usos similares al propuesto, que el solar donde se propone el uso es un solar de esquina, con estacionamiento y acera. Dicho solar esta calificado como comercial y el uso propuesto es comercial a operar en el primer piso.

1. De acuerdo con la información suministrada por la parte proponente en su memorial explicativo:
   a. Se solicita un Permiso Único Nuevo para Alquiler de Auto (Estacionamiento).
   b. Horario de operación: domingo a sábado de 8:00 am a 6:00 pm
   c. Estacionamientos: 6
   d. Empleados: 3

   [...]

   e. Justificación:
      - Se pide permiso para dedicar esta propiedad comercial para alquiler de vehículos con un número de empleados de 3 personas. Se proveerán 6 estacionamientos y se estará operando de lunes a domingo de 8:00 a 6:00 pm. Este tipo de negocio no genera ningún tipo de ruido, ni polvo que pueda incomodar a los colindantes. Esta propiedad se encuentra en un cruce ancho de la Ave. Rexach, colindando p[o]r una esquina con un negoci[o] de venta de gas propano y en la otra esquina del cruce, una gomera. **El uso de esta propiedad va a ser compatible con los comercios que se encuentran en la zona.** Este tipo de negocio beneficia a la comunidad ya que es un negocio seguro y tranquilo.

2. A tenor con la RC, en la Tabla 6.18-Usos Distrito ZU-G1 Zonas Designadas, el uso solicitado de Alquiler de auto (estacionamiento), no está permitido. **No obstante, el caso se evaluó como variación o excepción en uso, según Sección 33.5 del Reglamento de Zonificación Especial de Santurce.**

   [...]

5. En el expediente obran los siguientes documentos, entre otros, los cuales forman parte del expediente digital:
   - Foto del rótulo, según requerido por la Sección 2.1.9.12 del RC
   - Declaración Jurada por la instalación del rótulo según requerido por la Sección 2.1.9.12 RC
   - **Notificación a los colindantes inmediatos de la propiedad, según requerido por la Sección 2.1.9.7 del RC**
   - Croquis con dimensiones según requerido por la Sección 3.7.1.2 del RC
   - **Memorial explicativo y justificación de la variación solicitada según RC**
   - Copia del contrato de arrendamiento Sección 2.1.9.5-del Reglamento Conjunto.

6. Este trámite es un Permiso Único, el cual el Reglamento Conjunto lo define como un permiso para el inicio o continuación de la operación de un negocio, construcción o actividad incidental al mismo en el que se consolida permisos, licencias, autorización o certificaciones, el cual será expedido por la Oficina de Gerencia de Permisos, o los Municipios Autónomos con Jerarquía I a la III, conforme a lo dispuesto en el Capítulo VIII de la Ley Núm. 161-2009. Esta solicitud contiene las siguientes licencias y certificaciones, las cuales son evaluadas por la *Oficina de Gerencia de Permisos (OGPe):*

- Cumplimiento Ambiental
- Certificado de Prevención de Incendios
- Licencia Sanitaria

7. **No se celebró Vista Pública, siendo esta de carácter discrecional.**

8. **No se recibieron comentarios de colindantes o negocios en torno al proyecto, siendo estos debidamente apercibidos.**

9. **Personal de Inspección de la OPMASJ visitó el lugar el 10 de octubre de 2024, y rindió el Informe de Inspección de Uso correspondiente, el cual fue anejado al SBP.**

10. **El 27 de noviembre de 2024[,] se recibieron comentarios del Sr. Carlos Muñiz Pérez, Gerente de Urbanismo e Infraestructura de la Corporación del Proyecto ENLACE del Caño Martín Peña ("CPECMP"). La CPECMP no endosa la solicitud de PU por no considerarse una acción cónsona con el Plan de Distrito.**

(Énfasis nuestro).

Además, surge de la resolución que, el 13 de diciembre de 2024, el Comité de Permisos del Municipio se reunió para evaluar el caso y emitió una recomendación favorable. En virtud de lo anterior, la Oficial de Permisos del Municipio acogió la recomendación del Comité de Permisos y aprobó la solicitud de permiso único, sujeto a una serie de requerimientos y recomendaciones. La resolución fue notificada al proponente y dueño. Además, se le envió copia de cortesía a ENLACE.

Insatisfecho con la determinación, ENLACE presentó una *Moción Asumiendo Representación Legal, Solicitud de Intervención y de Revisión Administrativa* ante la División de Revisiones Administrativas de la OGPe (número de caso: 2025-618759-**SDR**-302107). En primer lugar, ENLACE alegó que, aunque se le notificó una copia de cortesía, la Corporación debía ser considerada como "parte" a los efectos de que se acepte, atienda y adjudique su solicitud de revisión administrativa. En la alternativa, arguyó que, de no ser considerada "parte", procedía que se autorizara una solicitud de intervención, conforme establece la Sección 2.1.9.9 del Reglamento Conjunto para la Evaluación y Expedición de Permisos

Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios de la Junta de Planificación de Puerto Rico.[4] Lo anterior, porque sostuvo que su interés podía quedar afectado adversamente por el procedimiento adjudicativo. Sobre el particular, expuso que, el Municipio ignoró su oposición a la solicitud del proponente. La Corporación arguyó que el Municipio "no podía actuar favoreciendo al proponente sin el endoso de ENLACE." Argumentó que, conceder el permiso mediante el trámite excepcional de variación de uso, no subsanaba la violación de la norma legislativa en la que incurrió el Municipio. Además, añadió que, el no autorizar la intervención de ENLACE conllevaría, "denegar la expresión y defensa de un claro y evidente interés público, así como coartar la política pública que una instrumentalidad de gobierno, como lo es ENLACE, viene obligada a poner en vigor y defender por mandato de ley". Por ello, solicitaron que se dejara sin efecto la *Resolución sobre Permiso Único Vía Variación* del 4 de febrero de 2025.

El 20 de junio de 2025, notificada el 23 del mismo mes y año, el Juez Administrativo de la División de Revisiones Administrativas de la OGPe expidió una *Resolución de Revisión Administrativa.* En esta, hizo un resumen del tracto procesal del caso, hasta la celebración de la vista administrativa ante un Oficial Examinador, celebrada el 21 de mayo de 2025[5]. En esta, las partes presentaron sus respectivos planteamientos en cuanto a si ENLACE tenía legitimación activa para instar el recurso de revisión administrativa ante la División. El 18 de junio de 2025, el Oficial Examinador rindió su informe de la vista, en el que consignó determinaciones de hecho,

---

[4] Reglamento Núm. 9473 del 16 de junio de 2023.

[5] A la vista, compareció ENLACE, representada por el Lcdo. César A. Vissepó Vázquez. El Municipio compareció representado por el Lcdo. José M. Fullana Hernández.

conclusiones de derecho y recomendó que se <u>desestimara el recurso y se confirmara la determinación del Municipio.</u>[6]

A la luz de lo anterior, el Juez Administrativo concluyó que ENLACE no cumplía con los requisitos en ley para ser considerada "parte", así como tampoco presentó una solicitud de intervención o participación en el trámite de aprobación del permiso. Al respecto, destacó que, no surge de la Ley Núm. 489-2004 —ley habilitadora de ENLACE— que esta fue creada para representar a la comunidad del Caño Martín Peña en procesos adjudicativos relacionados a la comunidad. Por tanto, concluyó que el Artículo 14 de la Ley 489-2004, *supra,* le confiere una participación limitada a ENLACE, la cual se circunscribe a emitir una posición en torno a la acción propuesta y si endosa o no la misma. Lo anterior, a requerimiento del Municipio y dentro de un término de veinte (20) días. En consecuencia, el Juez Administrativo determinó que lo dispuesto en el Artículo 14 de la ley habilitadora de ENLACE, no la convierte en parte, pues no cumple con la definición de "parte", conforme enunciada en la Ley de Procedimientos Administrativos Uniforme (LPAU)[7]. Añadió que tampoco surge una solicitud de intervención de ENLACE en el expediente de solicitud de permiso único (Trámite Núm. 2024-584496-**PU**-343658). Por ello, El Juez Administrativo resolvió que ENLACE no acreditó tener legitimación activa, por lo que, al no cumplirse con dicho requisito jurisdiccional, procedía desestimar el recurso.[8]

Además, el Juez Administrativo resolvió que ENLACE no logró rebatir la presunción de corrección que cobija la determinación emitida por el Municipio, por lo que no se justificaba revocar la misma. Al respecto, expuso que ENLACE no presentó evidencia de

---

[6] Véase, *Resolución de Revisión Administrativa,* determinación de hecho número 17.
[7] Ley Núm. 38-2017, según enmendada.
[8] Véase, pág. 17 de la *Resolución de Revisión Administrativa.*

que el Municipio hubiera actuado de forma arbitraria o caprichosa al momento de considerar la solicitud del proponente. Por el contrario, señaló que el Municipio tomó en consideración los comentarios de ENLACE, a pesar de que la corporación los presentó fuera del término establecido por ley. Especificó que el Municipio evaluó los comentarios, el comportamiento del sector y posibles impactos y concluyó que la propuesta era de menor impacto que los usos aledaños y representaba un beneficio para la comunidad. Por todo lo anterior, el Juez Administrativo acogió el informe del Oficial Examinador y declaró No Ha Lugar la solicitud de revisión presentada por ENLACE.

Inconforme, ENLACE acude ante esta Curia y formula los siguientes señalamientos de error:

**PRIMER SEÑALAMIENTO:** Erró la División de Revisiones Administrativas de la Oficina de Gerencia de Permisos (OGPe) al determinar, NO HA LUGAR, la Solicitud de Revisión Administrativa 2025-618759-SDR-302107, mediante Resolución con fecha de 20 de junio de 2025, bajo el fundamento de que ENLACE no cumplió con la definición de "PARTE" según lo dispuesto en la LPAU.

**SEGUNDO SEÑALAMIENTO:** Erró la División de Revisiones Administrativas de la Oficina de Gerencia de Permisos (OGPe) al determinar, NO HA LUGAR, la Solicitud de Revisión Administrativa 2025-618759-SDR-302107, mediante Resolución con fecha de 20 de junio de 2025, y concluir que la legitimación activa o *standing* para acudir en revisión no fue acreditada por ENLACE.

**TERCER SEÑALAMIENTO:** Erró la División de Revisiones Administrativas de la Oficina de Gerencia de Permisos (OGPe) al determinar, NO HA LUGAR, la Solicitud de Revisión Administrativa 2025-618759-SDR-302107, mediante Resolución con fecha de 20 de junio de 2025, al concluir que enlace (sic) no rebatió la presunción de corrección que permea en la determinación del Municipio. (sic) Incurriendo así en un abuso de discreción.

**CUARTO SEÑALAMIENTO:** Erró la División de Revisiones Administrativas de la Oficina de Gerencia de Permisos (OGPe) al determinar, NO HA LUGAR, la Solicitud de Revisión Administrativa 2025-618759-SDR-302107, mediante Resolución con fecha de 20 de junio de 2025, al concluir que procedía la variación solicitada por la parte proponente en el trámite

administrativo, Red Multi Investment, LLC. P/C Marcos A. Pérez.

**QUINTO SEÑALAMIENTO:** Erró la División de Revisiones Administrativas de la Oficina de Gerencia de Permisos (OGPe) al determinar, NO HA LUGAR, la Solicitud de Revisión Administrativa 2025-618759-SDR-302107, mediante Resolución con fecha de 20 de junio de 2025, al concluir que ENLACE presentó la postura fuera del término establecido en la Ley Número 489 de 4 de septiembre de 2004, según enmendada. (En adelante, Ley Núm. 489-2004 o Ley del Caño.)

El 1 de agosto de 2025, emitimos *Resolución*, en la que, entre otros asuntos, ordenamos a la OGPe elevar copia certificada del expediente administrativo del caso 2025-618759-SDR-302107. La OGPe cumplió con nuestra resolución el 7 de agosto de 2025.

Con el beneficio de la comparecencia de las partes, estamos en posición de resolver.

## II

## A

La jurisdicción es el poder o autoridad de un tribunal para considerar y decidir casos y controversias. *R&B Power, Inc. v. Junta de Subasta ASG*, 2024 TSPR 24, 213 DPR ___ (2024); *FCPR v. ELA et al.*, 211 DPR 521 (2023); *MCS Advantage v. Fossas Blanco et al.*, 211 DPR 135 (2023); *Cobra Acquisitions v. Mun. Yabucoa et al.,* 210 DPR 384 (2022). Es por ello que, la falta de jurisdicción de un tribunal incide directamente sobre el poder mismo para adjudicar una controversia. *Allied Mgmt. Group v. Oriental Bank*, 204 DPR 374, 386 (2020). Por tal razón, es norma reiterada que los tribunales son celosos guardianes de su jurisdicción y que tienen el deber ineludible de auscultar dicho asunto con preferencia a cualesquiera otros. *R&B Power, Inc. v. Junta de Subasta ASG*, supra; *Pueblo v. Torres Medina*, 211 DPR 950 (2023).

De ese modo, la ausencia de jurisdicción trae varias consecuencias, tales como: (1) que no sea susceptible de ser subsanada; (2) las partes no puedan conferírsela voluntariamente a

un tribunal como tampoco puede este arrogársela; (3) conlleva la nulidad de los dictámenes emitidos; **(4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (5) obliga a los tribunales apelativos a examinar la jurisdicción del foro de donde procede el recurso;** y (6) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal *motu proprio. Allied Mgmt. Group v. Oriental Bank*, supra. (Énfasis nuestro).

En ese sentido, en reiteradas ocasiones el Tribunal Supremo de Puerto Rico ha expresado que los tribunales tenemos el deber de proteger nuestra jurisdicción sin poseer discreción para asumirla donde no la hay. *Pueblo v. Ríos Nieves*, 209 DPR 264 (2022). **Por tanto, si un tribunal carece de jurisdicción, solo resta así declararlo y desestimar la reclamación sin entrar en los méritos de la controversia.** *Municipio de Aguada v. W. Construction, LLC y otro*, 2024 TSPR 69, resuelto el 21 de junio de 2024; *R&B Power, Inc. v. Junta de Subasta ASG*, supra; *Mun. de San Sebastián v. QMC Telecom*, 190 DPR 652, 660 (2014) (Énfasis nuestro). **A esos efectos, las cuestiones de jurisdicción son de índole privilegiada y deben ser resueltas con preferencia.** *Íd.*; *Pueblo v. Ríos Nieves*, supra; *FCPR v. ELA et al.*, supra. (Énfasis nuestro).

### B

Sabido es que los tribunales solo pueden resolver casos que sean justiciables. *Bhatia Gautier v. Gobernador*, 199 DPR 59, 68 (2017); *Asoc. Fotoperiodistas v. Rivera Schatz*, 180 DPR 920, 931 (2011). El principio de la justiciabilidad gobierna el ejercicio de la función revisora de los tribunales, fijando la jurisdicción de estos. Conforme a dicho principio, los tribunales limitan su intervención a resolver controversias reales y definidas que afectan las relaciones jurídicas de partes antagónicas u opuestas. *Super Asphalt v. AFI y otro*, 206 DPR 803, 815 (2021); *UPR v. Laborde Torres y otros I,* 180

DPR 253, 279-280 (2010); *ELA v. Aguayo*, 80 DPR 552, 583-584 (1958). Así, pues, los tribunales debemos evaluar estos requisitos de origen constitucional antes de considerar y pronunciarnos sobre los méritos de una controversia. *Íd.*

Como elemento esencial para la adjudicación de los méritos de una controversia, el principio de justiciabilidad impone a los tribunales el deber de evaluar si la parte que acude ante nuestra consideración posee legitimación activa o *standing*. *Hernández, Santa v. Srio. de Hacienda*, 208 DPR 727, 738-739 (2022); *Hernández Torres v. Gobernador*, 129 DPR 824, 835 (1992). El Tribunal Supremo de Puerto Rico ha definido la legitimación activa como "la capacidad que se le requiere a la parte promovente de una acción para comparecer como litigante ante el tribunal, realizar con eficiencia actos procesales y, de esta forma, obtener una sentencia vinculante". *Íd.*, citando a *Ramos, Méndez v. García García*, 203 DPR 379, 394 (2019); *Bhatia Gautier v. Gobernador*, supra, pág. 69. El propósito de la legitimación activa es que el tribunal se asegura de que la parte reclamante tiene un interés genuino, va a perseguir su causa vigorosamente y que todos los asuntos pertinentes serán presentados ante la consideración del juzgador. *Pérez Rodríguez v. López Rodríguez et al.*, 210 DPR 163, 178-179 (2022).

Conforme a la doctrina de justiciabilidad, la parte que solicita un remedio judicial debe demostrar que: (1) ha sufrido un daño claro y palpable; (2) el daño es real, inmediato y preciso, no abstracto o hipotético; (3) existe una conexión entre el daño y la causa de acción ejercitada, y (4) la causa de acción surge al palio de la Constitución. *Hernández, Santa v. Srio. de Hacienda*, supra, pág. 739; *Bhatia Gautier v. Gobernador*, supra.

**C**

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, 3 LPRA sec. 9601 *et*

*seq.* (LPAU), regula lo concerniente a la revisión judicial de las órdenes o resoluciones finales de los organismos administrativos. El Tribunal Supremo de Puerto Rico ha expresado que el derecho a cuestionar dichas determinaciones es parte del debido proceso de ley cobijado por nuestra Constitución. *ACT v. Prosol et als.*, 210 DPR 897 (2022); *Asoc. Condómines v. Meadows Dev.*, 190 DPR 843, 847 (2014), citando a *Picorelli López v. Depto. de Hacienda*, 179 DPR 720, 736 (2010).

La Sección 1.3 de la LPAU, define el término *parte* de la siguiente manera:

> Toda persona o agencia autorizada por ley a quien se dirija específicamente la acción de una agencia o que sea parte en dicha acción, o que se le permita intervenir o participar en la misma, o que haya radicado una petición para la revisión o cumplimiento de una orden, o que sea designada como parte en dicho procedimiento.[9]

Por tanto, es parte para efectos de la revisión judicial el promovido o el promovente; es decir la persona objeto de la acción administrativa, así como también aquellas personas naturales o jurídicas a quienes la agencia las hizo partes, previa solicitud formal al efecto y debidamente fundamentada, mediante el mecanismo de intervención.[10] Por tanto, el hecho de que se trate de una parte con interés a los efectos de participar en los procedimientos administrativos no implica, necesariamente, que posea legitimación para presentar un recurso de revisión judicial. D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 2da ed., Bogotá, Ed. Forum, 2001, pág. 500; *Fund. Surfrider y otros v. ARPe, supra*.

Ahora bien, respecto a la solicitud de intervención, la Sección 3.5 de la LPAU, establece lo siguiente:

---

[9] 3 LPRA § 9603(k).
[10] Sección 1.3(k) de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), Ley Núm. 38-2017, 3 LPRA 9603; *Fund. Surfrider y otros v. ARPe, supra*, pág. 576.

> Cualquier persona que tenga un interés legítimo en un procedimiento adjudicativo ante una agencia podrá someter una solicitud por escrito y debidamente fundamentada para que se le permita intervenir o participar en dicho procedimiento. La agencia podrá conceder o denegar la solicitud, a su discreción, tomando en consideración entre otros los siguientes factores:
>
> (a) Que el interés del peticionario pueda ser afectado adversamente por el procedimiento adjudicativo.
>
> (b) Que no existan otros medios en derecho para que el peticionado pueda proteger adecuadamente su interés.
>
> (c) Que el interés del peticionario ya esté representado adecuadamente por las partes en el procedimiento.
>
> (d) Que la participación del peticionario pueda ayudar razonablemente a preparar un expediente más completo del procedimiento.
>
> (e) Que la participación del peticionario pueda extender o dilatar excesivamente el procedimiento.
>
> (f) Que el peticionario represente o sea portavoz de otros grupos o entidades de la comunidad.
>
> (g) Que el peticionario pueda aportar información, pericia, conocimientos especializados o asesoramiento técnico que no estaría disponible de otro modo en el procedimiento.
>
> La agencia deberá aplicar los criterios que anteceden de manera liberal y podrá requerir que se le someta evidencia adicional para poder emitir la determinación correspondiente con respecto a la solicitud de intervención.[11]

Conforme a lo anterior, una parte adversamente afectada por una orden o resolución final de una agencia, que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente, podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones. Sección 4.2 de la LPAU, 3 LPRA sec. 9672; *Miranda Corrada v. DDEC et al.*, 211 DPR 738 (2023).

De tal manera, una parte tiene legitimación activa o *standing* cuando el promovente ha sufrido un daño claro y palpable; ese daño es inmediato y preciso, no abstracto ni hipotético; existe una relación causal razonable entre la acción que se ejecuta y el daño alegado, y la causa de acción surge al amparo de la Constitución o de alguna ley. *Fund. Surfrider y otros v. ARPe*, 178 DPR 563 (2010).

---

[11] 3 LPRA § 9645.

**D**

De otra parte, como política pública del ELA, se dispuso otorgarle urgencia y peso a la restauración ambiental del Caño Martín Peña, ello con el propósito de rehabilitar y revitalizar las comunidades a su alrededor, con una visión integral del desarrollo y sobre la base del apoderamiento comunitario. A este Proyecto se le denominó Proyecto ENLACE del Caño Martín Peña. 23 LPRA sec. 5032.

Por consiguiente, a través de la Ley del Caño Martín Peña, se creó la Corporación "como una entidad y subdivisión política del Estado Libre Asociado de Puerto Rico con personalidad jurídica independiente y separada de sus funcionarios y de cualquier otra agencia pública, instrumentalidad gubernamental y del Municipio de San Juan".[12]

La Corporación tendrá los siguientes objetivos:

1. Será el ente responsable de la coordinación e implantación de todos los aspectos del Proyecto ENLACE, incluyendo, sin que sea una limitación, el desarrollo de vivienda, infraestructura, dragado y canalización del Caño, desarrollo urbano y desarrollo socioeconómico. Podrá implantar proyectos y programas relacionados, contratar a terceros para que los desarrollen y coordinar con aquellas Agencias Públicas con proyectos y programas en el Distrito.

2. Garantizará mecanismos de participación ciudadana en la planificación y ejecución del Proyecto ENLACE y promoverá el apoderamiento comunitario, la capacitación del liderato y el fortalecimiento de las organizaciones de base comunitaria. Proveerá apoyo técnico a los residentes, empresas comunitarias y otras entidades de base comunitaria del Distrito cuando sea necesario y mantendrá informados a los residentes y comerciantes sobre el desarrollo del Proyecto ENLACE y los mecanismos de participación.

3. Promoverá la creación de alianzas estratégicas con el sector privado empresarial y con organizaciones bona fide sin fines de lucro.

4. Promoverá la mayor participación del sector privado en el desarrollo del Proyecto ENLACE, para lo cual

---

[12] 23 LPRA sec. 5033.

estimulará la inversión, el desarrollo industrial y comercial, la iniciativa individual y colectiva de los ciudadanos y empresas del Distrito y de la comunidad puertorriqueña en general.

5. Propiciará, facilitará y potenciará la creación, el mejoramiento y el fortalecimiento de empresas y negocios de residentes del Distrito y de la Península de Cantera localizados allí, entre otros, mediante la concesión de medidas de trato preferente en los procesos de compras de las Agencias Públicas. Promoverá la contratación y subcontratación de residentes y organizaciones de base comunitaria, incluyendo empresas comunitarias, que cumplan con los requerimientos, y estén capacitadas para ejecutar programas y proyectos relacionados con el Proyecto ENLACE.

6. Garantizará la continuidad de la participación ciudadana en la toma de decisiones, la planificación y ejecución del Proyecto ENLACE que permita tanto la permanencia a largo plazo de las comunidades que comprenden el Distrito, así como un trato justo y equitativo en los procesos de realojo de familias necesarios para la implantación del Proyecto ENLACE.

7. Llevará a cabo sus trabajos según logre su pleno desarrollo, con personal capacitado y una reducida estructura para que no pierda su carácter de entidad coordinadora ágil y eficiente, y no se convierta en pesado aparato burocrático.

8. Buscará formas innovadoras y agresivas para el financiamiento del desarrollo del Proyecto ENLACE, combinando para ello recursos públicos y recursos privados.

9. Coordinará la atención apropiada a la situación de titularidad de los terrenos de acuerdo a lo establecido en esta Ley.[13]

Entre los derechos, poderes y prerrogativas delegados a la Corporación se encuentran los siguientes (23 LPRA sec. 5035):

(a) Adoptar su sello corporativo;

(b) Demandar y ser demandada;

(c) Celebrar actos, acuerdos y contratos de todas clases, incluyendo aquéllos relacionados con bienes y servicios;

[…]

(d) Adquirir, construir, mejorar, operar y mantener proyectos dentro del Distrito de Planificación Especial del Caño Martín Peña, así como cualesquiera bienes relacionados con dichos proyectos;

---

[13] *Íd.*

(e) Tener oficiales y empleados;

(f) Establecer reglamentación para su organización, funcionamiento y la ejecución de sus facultades y deberes;

(g) Recibir los servicios de empleados de las Agencias Públicas, con el consentimiento de dichas Agencias Públicas, para llevar a cabo cualquier estudio, investigación o actividad de la Corporación que sea necesaria o conveniente para cumplir con los propósitos de esta Ley;

(h) Recibir y aceptar fondos y donaciones de cualquier Agencia Pública del Gobierno de Puerto Rico, del Gobierno de los Estados Unidos de América, de municipios y de entidades sin fines pecuniarios para lograr los propósitos de este capítulo y cumplir con las condiciones y requisitos respecto a cualesquiera fondos o donaciones que reciba;

(i) Gestionar y obtener de las Agencias Públicas la ayuda técnica y económica que estime necesaria, de cualquier naturaleza, para cumplir con las funciones de la Corporación;

(j) Controlar de manera exclusiva sus propiedades y actividades y decidir el carácter y necesidad de todos sus gastos y la forma en que los mismos habrán de incurrirse, autorizarse y pagarse;

[...]

(n) Prestar dinero, con garantía hipotecaria, bajo los términos que estime conveniente, a cualquier desarrollador que se organice para llevar a cabo desarrollos en el Distrito;

[...]

(p) Proveer ayuda económica de cualquier clase a entidades privadas, incluidos incentivos y subsidios, préstamos o ayuda técnica para llevar a cabo desarrollos, proyectos, programas o actividades sociales, económicos, urbanos, de vivienda o ambientales de conformidad con los propósitos de esta Ley, con especial interés en el G-8 y las organizaciones de base comunitaria en el Distrito;

[...]

(r) Administrar cualquiera de sus proyectos en la forma que por reglamento determine, incluyendo, sin que se entienda como una limitación, dar unidades de vivienda o comercio en alquiler, colocarlas en fideicomiso, y prestarlas para uso a cualquier título;

(s) Participar conjuntamente con las Agencias Públicas y con los residentes del Distrito en la coordinación de iniciativas en el Distrito;

(t) Participar conjuntamente con las Agencias Públicas y con los residentes del Distrito de la planificación del desarrollo integral de los terrenos que comprenden el Distrito de acuerdo con las disposiciones de la Legislación y reglamentos vigentes;

[...]

(w) Participar en la planificación, diseño y construcción de los edificios, obras, estructuras, infraestructura y demás que

sea necesaria para el desarrollo integral del Proyecto ENLACE;

(x) Solicitar, aceptar y obtener cualesquiera fondos, donaciones, usufructo, fideicomisos o ayudas técnicas o económicas del gobierno federal, del gobierno del Estado Libre Asociado, incluyendo sus instrumentalidades y subdivisiones políticas, o de fuentes privadas, para llevar a cabo los propósitos de la Corporación y los fines dispuestos en esta Ley; auspiciar proyectos originados bajo leyes o programas federales; actuar como agencia delegante o delegatoria; y supervisar la utilización de los fondos así adquiridos;

[...]

No obstante lo señalado en este Artículo, las acciones realizadas por la Corporación, o cualquier otra oficina o instrumentalidad creada a tenor con ésta Ley, no podrán ser contrarias a la política pública del Gobierno del Estado Libre Asociado de Puerto Rico, sus oficinas, agencias públicas, instrumentalidades o corporaciones públicas, según dispuesta en Ley.

Específicamente, el Artículo 14 de la Ley 489-2004, *supra,* establece el tipo de participación que tendrá la Corporación en lo relacionado al proceso de evaluación y otorgación de autorizaciones, permisos o comentarios. En lo aquí pertinente, el citado artículo expresa lo siguiente:

[...]

Toda autorización, permiso o **endoso (incluso cualesquiera variaciones y excepciones de normas)** de las Agencias Públicas, en especial de la Oficina de Gerencia de Permisos o su sucesora, **del Municipio de San Juan (incluyendo, pero sin limitarse, a sus Oficinas de Ordenación Territorial y de Permisos)**, de los Departamentos de Transportación y Obras Públicas y de Recursos Naturales y Ambientales, de la Junta de Calidad Ambiental y de la Junta de Planificación (incluyendo, sin limitarse, a las consultas de ubicación) en el Distrito **deberá otorgarse únicamente cuando sean cónsonas con las disposiciones de los Planes de Uso de Terrenos y de Desarrollo Integral del Distrito. La Agencia Pública correspondiente le consultará por escrito a la Corporación su posición en torno a la acción propuesta y si la Corporación endosa o no la acción y las condiciones que la Corporación entiende razonables para que se proceda con la acción.** La Corporación tendrá un término de veinte (20) días (prorrogable únicamente con el consentimiento de la Agencia Pública respectiva) para proveer los comentarios por escrito **y de no proveer los comentarios se entenderá que la Corporación no interesa informar su posición.**

Con el marco jurídico antes expuesto, estamos en posición de resolver.

**III**

Antes de pasar a atender los méritos del recurso, estamos obligados a auscultar nuestra jurisdicción para atender este recurso de revisión administrativa. Al examinar los límites de nuestra jurisdicción, concluimos que estamos impedidos de entrar en los méritos de la revisión administrativa ante nos y de la procedencia o no del permiso otorgado por el Municipio de San Juan. Ello, toda vez que ENLACE carece de legitimación activa para instar el presente recurso de revisión judicial. *Mun. de Aguada v. JCA*, supra. Veamos.

Al examinar el alegato en oposición del Municipio, hemos concluido que procede la desestimación del recurso por falta de jurisdicción, ya que ENLACE no ha mostrado satisfactoriamente que cuenta con legitimación activa para promover el presente pleito. Específicamente, no cumplió con demostrar los requisitos estatutarios para que se le considerara como parte ante el foro administrativo, tanto en el trámite de solicitud de permiso del proponente (2024-584496-PU-343658) como en el recurso de revisión ante la División de Revisiones Administrativas de la OGPe (2025-618759-SDR-302107). Además, tampoco demostró que tiene o está en peligro de tener un daño real y palpable que le otorgue la vigorosidad que se le requiere a todo litigante para reconocerle un interés legítimo en el recurso que promueve. Tan es así, que ENLACE ni siquiera solicitó intervenir mediante escrito fundamentado en la etapa del proceso de aprobación del permiso. De todas maneras, aun de haberse solicitado tal intervención era necesario satisfacer el requisito del daño o la afectación sustancial a sus intereses individuales. ENLACE no lo hizo.

Según surge del derecho antes citado, para tener legitimación activa, un litigante debe demostrar que es parte y que es o será adversamente afectada por la adjudicación de la controversia. En

cuanto al primer criterio, se ha resuelto que una "parte" es: 1) toda persona o agencia autorizada por ley a quien se dirija específicamente la acción de una agencia o que sea parte en la acción; 2) la persona que se le permita intervenir o participar; 3) la persona que haya radicado una petición para la revisión o cumplimiento de una orden, y 4) la persona que sea designada como parte en el procedimiento. Además, se consideran como partes a los efectos de la revisión judicial aquellos quienes, al haber participado e intervenido en el procedimiento administrativo, la agencia les hizo partes, a través del mecanismo de intervención consignado en la Sec. 3.5 de la LPAU, 3 LPRA sec. 2155. *Fund. Surfrider y otros v. A.R.Pe.*, supra, pág. 576.

En cuanto al segundo criterio, debemos puntualizar que, en función de reconocer a un litigante como parte adversamente afectada, el ordenamiento jurídico es riguroso al requerir que padezca o esté en peligro de padecer un daño inmediato, preciso y que no sea abstracto o hipotético.

Por lo anterior, ENLACE debía demostrar que la concesión del permiso aquí en controversia, le provocaba un daño de la magnitud que requiere la jurisprudencia. Debía demostrar que la otorgación del referido permiso constituye un daño inmediato y no hipotético. En consecuencia, ante la ausencia de los criterios de legitimación aquí apuntados estamos impedidos de ejercer nuestra función revisora, pues, los tribunales estamos llamados a resolver controversias genuinas y no cuestiones abstractas e hipotéticas que no tengan consecuencias entre las partes. *Mun. de Aguada v. JCA*, supra; *Fund. Surfrider y otros v. A.R.Pe.*, supra, págs. 571-572; *E.L.A. v. Aguayo*, 80 DPR 552, 558-559 (1958). Estamos ante cuestionamientos puramente hipotéticos, los cuales la doctrina de autolimitación judicial nos impide revisar. Así las cosas, al no cumplirse los criterios de legitimación activa, no podemos reconocer

a ENLACE la capacidad para promover este recurso y, por consiguiente, este tribunal carece de jurisdicción para entrar en los méritos del reclamo.

## IV

Por los fundamentos previamente discutidos, desestimamos el recurso de epígrafe por falta de jurisdicción, ya que ENLACE carece de legitimación activa. Como consecuencia de nuestro dictamen, prevalece la aprobación del permiso 2024-584496-PU-343658.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones